1

2

3

4

5

6

7

8    **IN THE UNITED STATES DISTRICT COURT**

9    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   VERNON REBIDOUX,                    No. 2:16-CV-1033-MCE-CMK-P

12          Plaintiff,

13      vs.                              <u>ORDER</u>

14   J. MACOMBER, et al.,

15          Defendants.

16   _____/

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

19          The court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  <u>See</u> 28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23   from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26   This means that claims must be stated simply, concisely, and directly.  <u>See McHenry v. Renne</u>,

1

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff names the following as defendants: (1) Macomber, (2) Jones, (3) Russell; (4) Johnson; (5) Mendoza; (6) Brady; (7) Bodenhamer; (8) Sahota; and (9) Kelley.  Plaintiff claims that defendants Russell, Johnson, Mendoza, Jones, and Brady were deliberately indifferent to inhuman conditions of confinement during a six-day period in October 2015 when they refused to adequately respond to his complaints that the toilet in his cell had overflowed and flooded his cell with feces.  Specifically, plaintiff claims that his cell was not cleaned and he was not provided with access to a shower or cleaning supplies.

Next, plaintiff states that he was escorted to a "1st level 602 medical appeal" on October 27, 2015.  According to plaintiff, defendant Bodenhamer "refuses to allow escorting c/o's to take plaintiff's vital."  Plaintiff next alleges that defendant Sahota failed to obtain vital signs or conduct an examination at a "2nd level medical appeal" on December 18, 2015.

Next, plaintiff claims that defendant Kelley acted improperly with respect to handling of various inmate grievances filed by plaintiff regarding medical treatment.

Next, plaintiff alleges that defendants Bodenhamer and Sahota failed to provide medical treatment on January 6, 2016, when he presented to the medical clinic with severe back pain.  Plaintiff claims that defendant Bodenhamer consistently failed to provide medical care and that by May 2016 his condition had degraded to the point plaintiff could no longer sit in an

1    upright posture for more than a few minutes at a time.

2            Finally, plaintiff claims that unspecified defendants retaliated against him for

3    having filed a lawsuit on September 26, 2015.

4

5                                        **II.  DISCUSSION**

6            The court finds that plaintiff has stated a claim for relief based on his allegations

7    of a six-day period in which his cell was flooded with feces and he was not provided with

8    cleaning supplies or access to a shower.  The court also finds that plaintiff has stated a claim

9    based on his allegations that defendants Bodenhamer and Sahota failed to provide medical

10   treatment from January 2016 through May 2016 for plaintiff's severe back pain.  The court,

11   however, finds that the remaining of plaintiff's claims are defective for the reasons outlined

12   below.

13       A.    **Supervisory Liability – Defendant Macomber**

14           Plaintiff's complaint names Macomber, who is the prison warden.  Supervisory

15   personnel are generally not liable under § 1983 for the actions of their employees.  See Taylor v.

16   List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability

17   under § 1983).  A supervisor is only liable for the constitutional violations of subordinates if the

18   supervisor participated in or directed the violations.  See id.  The Supreme Court has rejected the

19   notion that a supervisory defendant can be liable based on knowledge and acquiescence in a

20   subordinate's unconstitutional conduct because government officials, regardless of their title, can

21   only be held liable under § 1983 for his or her own conduct and not the conduct of others.  See

22   Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  Supervisory personnel who

23   implement a policy so deficient that the policy itself is a repudiation of constitutional rights and

24   the moving force behind a constitutional violation may, however, be liable even where such

25   personnel do not overtly participate in the offensive act.  See Redman v. Cnty of San Diego, 942

26   F.2d 1435, 1446 (9th Cir. 1991) (en banc).

                                            3

1    When a defendant holds a supervisory position, the causal link between such

2    defendant and the claimed constitutional violation must be specifically alleged.  See Fayle v.

3    Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir.

4    1978).  Vague and conclusory allegations concerning the involvement of supervisory personnel

5    in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th

6    Cir. 1982).  "[A] plaintiff must plead that each Government-official defendant, through the

7    official's own individual actions, has violated the constitution." Iqbal, 129 S.Ct. at 1948.

8    Here, plaintiff's complaint contains no specific allegations as to defendant

9    Macomber.  Plaintiff's reference to Macomber is limited to the following general statement:

10    "Defendant J. Macomber, Warden of California State Prison Sacramento.  He is legally

11    responsible for the operation of CSP-Sac and for the welfare of all the inmates in that prison."

12    This statement fails to meet the requirement of pleading a causal link between the defendant's

13    personal participation and a constitutional violation.  Given that it appears that plaintiff's sole

14    theory of liability against defendant Macomber is based on the concept of respondeat superior,

15    plaintiff is not entitled leave to amend as to this defendant.

16    **B.    Grievance Process – Defendant Kelley**

17    Plaintiff alleges that Defendant Kelley improperly handled plaintiff's inmate

18    grievances.  Prisoners have no stand-alone due process rights related to the administrative

19    grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

20    Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

21    inmates to a specific grievance process).  Because there is no right to any particular grievance

22    process, it is impossible for due process to have been violated by ignoring or failing to properly

23    process grievances.   Numerous district courts in this circuit have reached the same conclusion.

24    See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

25    process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863

26    (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

4

grievances does not support constitutional claim); <u>James v. U.S. Marshal's Service</u>, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); <u>Murray v. Marshall</u>, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983). Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment.

In this case, plaintiff has not alleged facts which would implicate plaintiff's First Amendment rights. Specifically, plaintiff admits that he was able to access the prison appeals process. He states: "Each and every medical appeal was closed out, rejected, and cancelled with no medical explanation." Nor has plaintiff alleged that he was unable to proceed with litigation due to alleged interference with the grievance process. Rather, plaintiff's claim is, as he alleges, based on his contention that his inmate grievances were not properly processed. Because plaintiff has not stand-alone due process rights with respect to the inmate grievance process, plaintiff is not entitled leave to amend as to this claim.

**C.   Medical Care – October and December 2015**

Plaintiff claims that defendant Bodenhamer failed to obtain vital signs on October 27, 2015, and that defendant Sahota failed to obtain vital signs or conduct an examination on December 18, 2015. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners

1   with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v.

2   McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth

3   Amendment only when two requirements are met: (1) objectively, the official's act or omission

4   must be so serious such that it results in the denial of the minimal civilized measure of life's

5   necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly

6   for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth

7   Amendment, a prison official must have a "sufficiently culpable mind."  See id.

8           Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

9   injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

10  105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

11  health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

12  sufficiently serious if the failure to treat a prisoner's condition could result in further significant

13  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

14  1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

15  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

16  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

17  activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

18  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

19          The requirement of deliberate indifference is less stringent in medical needs cases

20  than in other Eighth Amendment contexts because the responsibility to provide inmates with

21  medical care does not generally conflict with competing penological concerns.  See McGuckin,

22  974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

23  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

24  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

25  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

26  treatment, or interference with medical treatment, may also constitute deliberate indifference.

1   See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

2   demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

3          Negligence in diagnosing or treating a medical condition does not, however, give

4   rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

5   difference of opinion between the prisoner and medical providers concerning the appropriate

6   course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

7   90 F.3d 330, 332 (9th Cir. 1996).

8          Here, plaintiff's allegations indicate that he was being interviewed by defendants

9   Bodenhamer and Sahota as part of the inmate grievance process.  Specifically, plaintiff states

10  that, on both occasions, he was being escorted to a "medical appeal."  There is no allegation that

11  the meetings with defendant Bodenhamer in October 2015 and defendant Sahota in December

12  2015 were related to any emergent serious medical need.  Rather, the meetings were for the

13  purpose of evaluating plaintiff's inmate grievances concerning prior medical treatment.  Plaintiff

14  will be given an opportunity to amend the complaint to provide additional factual allegations

15  concerning events occurring on October 27, 2015, and December 18, 2015, with respect to

16  medical treatment.

17      **D.    Retaliation**

18         Plaintiff alleges that unspecified defendants retaliated against his for having filed

19  a lawsuit in September 2015.  In order to state a claim under 42 U.S.C. § 1983 for retaliation, the

20  prisoner must establish that he was retaliated against for exercising a constitutional right, and that

21  the retaliatory action was not related to a legitimate penological purpose, such as preserving

22  institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).

23  In meeting this standard, the prisoner must demonstrate a specific link between the alleged

24  retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th

25  Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner

26  must also show that the exercise of First Amendment rights was chilled, though not necessarily

1   silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir.

2   2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner

3   plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

4   took adverse action against the inmate; (2) the adverse action was taken because the inmate

5   engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment

6   rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,

7   408 F.3d at 568.

8          Plaintiff's vague and conclusory claim of retaliation fails for at least two reasons.

9   First, plaintiff fails to specificy which named defendants retaliated against him.  Second, plaintiff

10  has not alleged that any defendant was aware that he filed a lawsuit in September 2015.  Plaintiff

11  will be provided an opportunity to amend to set forth more specific allegations.

12

13                          **III.  CONCLUSION**

14         Because it is possible that some of the deficiencies identified in this order may be

15  cured by amending the complaint, plaintiff is entitled to leave to amend.  See Lopez v. Smith,

16  203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule,

17  an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d

18  1258, 1262 (9th Cir. 1992).  Therefore, if plaintiff amends the complaint, the court cannot refer

19  to the prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule

20  220.  An amended complaint must be complete in itself without reference to any prior pleading.

21  See id.

22         If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

23  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

24  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how

25  each named defendant is involved, and must set forth some affirmative link or connection

26  between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

Accordingly, IT IS HEREBY ORDERED that plaintiff may file a first amended complaint within 30 days of the date of service of this order.


DATED:  March 8, 2017

_Craig M. Kellison_
_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE